IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MIGUEL PEREZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 3:11-cv-819-NJR-DGW |
| JAMES FENOGLIO, DR. PHIL MARTIN, | ) | |
| WEXFORD HEALTH SOURCES, INC., LEE | ) | |
| RYKER, PAMELA MORAN, C. VAUGHN, | ) | |
| GLADYSE C. TAYLOR, BRIAN | ) | |
| FAIRCHILD, and C. BROOKS, | ) | |
| | ) | |
| Defendants. | ) | |

### REPORT AND RECOMMENDATION

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Nancy J. Rosenstengel pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a).  For the reasons set forth below, it is **RECOMMENDED** that the Motion for Summary Judgment for Failure to Exhaust Administrative Remedies filed by Defendants Brooks, Fenoglio, and Wexford (Doc. 76) be **DENIED** and the Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Defendants Martin, Ryker, Taylor, Fairchild, Moran, and Vaughn (Doc. 80) be **GRANTED IN PART AND DENIED IN PART**, and that the Court adopt the following findings of fact and conclusions of law.

### FINDINGS OF FACT

Plaintiff Miguel Perez, an inmate in the custody of the Illinois Department of Corrections

("IDOC"), filed this action pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Lawrence Correctional Center ("Lawrence").   Plaintiff brings this suit against Dr. James Fenoglio, Nurse Christine Brooks, Wexford Health Sources, Inc., Lawrence Health Care Administrator Phil Martin, Counselor Cecil Vaughn, Grievance Officer Pamela Moran, Warden Lee Ryker, Acting IDOC Director Gladyse Taylor, and ARB Officer Brian Fairchild.   In particular, Plaintiff alleges that Defendants were deliberately indifferent to his health in failing to provide adequate medical care for his severe hand injury, in violation of the Eighth Amendment.   Plaintiff is proceeding in this action on the following counts:

| | |
|---|---|
| Count 1: | Defendant Dr. Fenoglio exhibited deliberate indifference toward Plaintiff's severe hand injury, in violation of the Eighth Amendment, when Defendant Fenoglio failed to treat Plaintiff with adequate, timely care and ignored treatment recommendations of specialists at the Carle Clinic; |
| Count 2: | Defendant Nurse Brooks exhibited deliberate indifference toward Plaintiff's severe hand injury, in violation of the Eighth Amendment, when she failed to provide Plaintiff with adequate medical treatment for his hand injury or ensure that others did; |
| Count 3: | Defendant Wexford Health Sources, Inc. exhibited deliberate indifference toward Plaintiff's severe hand injury, in violation of the Eighth Amendment, by maintaining a policy or practice that prevented nurses from stitching wounds or prescribing medication unless a doctor was present, while also limiting the time that doctors were on duty; |
| Count 4: | Defendant Health Care Administrator Martin exhibited deliberate indifference toward Plaintiff's severe hand injury, in violation of the Eighth Amendment, by refusing to grant Plaintiff's referral request without explanation for four days; |
| Count 5: | The Grievance Defendants (i.e., Counselor Vaughn, Officer Moran, Warden Ryker, Director Taylor, and Officer Fairchild) displayed deliberate indifference toward Plaintiff's severe hand injury, in violation |

of the Eighth Amendment, when they obtained actual knowledge of Plaintiff's condition and his inadequate medical care and still failed to intervene on Plaintiff's behalf to rectify the situation; and

Count 6:    Defendants Fenoglio and Administrator Martin retaliated against Plaintiff, in violation of the First Amendment, when they denied him adequate medical care for his hand injury because he filed a grievance against prison officials for withholding his prescription medication for depression.

Defendants Brooks, Fenoglio, and Wexford ("Wexford Defendants"), and Martin, Vaughn, Moran, Ryker, Taylor, and Fairchild ("IDOC Defendants") filed motions for summary judgment (Docs. 76 and 80) asserting that Plaintiff failed to exhaust his administrative remedies prior to filing suit.[1]  In support of their motions, Defendants assert that the two grievances filed by Plaintiff related to this matter, dated May 20, 2010 and January 10, 2011, were either not exhausted or did not sufficiently describe and/or mention the Defendants.

In particular, with regard to Plaintiff's May 20, 2010 grievance, Defendants concede that this grievance was fully exhausted; however, Defendants assert that this grievance failed to sufficiently mention or describe them and, as such, they assert this grievance fails to exhaust Plaintiff's administrative remedies (aside from Defendant Fenoglio who concedes this grievance exhausted Plaintiff's claim in Count 1 that he failed to provide Plaintiff with adequate, timely care for his hand injury and Count 6, Plaintiff's retaliation claim).  In this grievance, Plaintiff complains that on May 16, 2010 he was taken to the healthcare unit and, "since there was no doctor on call" his hand was wrapped in gauze and he was told he would see the doctor on the following day (Doc. 77-1, p. 1).  Plaintiff goes on to explain that when he saw the doctor the

---

[1] Defendant Dr. Fenoglio concedes that Plaintiff exhausted his administrative remedies with regard to Count 1 as it relates to Plaintiff's allegation that Defendant Fenoglio failed to provide Plaintiff with adequate, timely care for his hand injury. Defendant Fenoglio also concedes that Plaintiff exhausted his administrative remedies with regard to Count 6 (*see* Doc. 77, p. 6).

following day, the doctor decided that he needed to go to an outside hospital to see a hand surgeon and, despite this recommendation by the doctor, Plaintiff indicates that as of May 20, 2010 "besides having gauzed [sic] wrapped around [his] hand and given [sic] oral antibiotics, nothing has been done" (*Id.* at p. 2).  For these reasons, Plaintiff complains that the "health care professionals at this facility have been deliberately indifferent in providing needed care [and] it seems as though [he is] being punished in retribution for a prior grievance [he] had filed on January 2, 2010" (*Id.*).  Plaintiff asserts that his statements in this grievance were sufficient to exhaust his claims against Defendant Brooks, Wexford, and Martin as he was clearly complaining of the treatment, or lack thereof, he received for his hand injury on May 16 and May 17, 2010, as well as the delay in his transfer to an outside facility.

With regard to Plaintiff's January 10, 2011 grievance, Defendants assert that Plaintiff failed to follow the administrative procedures to sufficiently exhaust this grievance and, in any event, Defendants assert that this grievance failed to sufficiently identify or describe them or complain about their actions at issue in this lawsuit.  The evidence before the Court indicates that Plaintiff's counselor received this grievance on January 15, 2011 and provided a response on January 24, 2011 (Doc. 77-4).  Plaintiff contends that he attempted to submit this grievance to the Grievance Officer the day after receiving his counselor's response (Declaration of Miguel Perez, Doc. 84-3, ¶ 6); however, he never received a response.  As such, Plaintiff avers he sent his counselor, Counselor Downen, a request slip on or about February 16, 2011 indicating he had not received a response to his grievance, to which he again never received any response (*Id.* at ¶ 7).  After attempting to inquire about his grievance verbally with Counselor Downen in late February, 2011 and being told that prison officials "were about 4 months behind in responding to

grievances", Plaintiff wrote a letter to Terri Anderson in the Office of Inmate Issues (hereinafter referred to as the "Administrative Review Board" or "ARB") on April 27, 2011 explaining that he had not received a grievance officer's response to his January 10, 2011 grievance (*Id.* at ¶ 9; *see* Doc. 84-4).   Plaintiff attests that he attached his January 10, 2011 grievance to this correspondence (*Id.* at ¶ 9).   In May, 2011, Plaintiff indicates that the ARB sent him correspondence returning his January 10, 2011 grievance because it lacked a grievance officer's response (*Id.* at ¶ 11; *see* Doc. 84-2).   Also on April 27, 2011, Plaintiff submitted a resident request slip to Warden Lee Ryker and Counselor Downen explaining that he had not received the Grievance Officer's response to his January 10, 2011 grievance (Doc. 84-3, ¶ 10, *see* Doc. 84-5).   Plaintiff avers he never received a response from either Counselor Downen or Warden Ryker (Doc. 84-3, ¶ 10).   There is no other documentation from the ARB or Lawrence concerning Plaintiff's January 10, 2011 grievance.

With regard to the content of the January 10, 2011 grievance, Plaintiff explains that he suffered an injury to his right thumb on May 16, 2010 and was taken to the Carle Clinic for evaluation on May 21, 2010 (*See* Doc. 84-1).   At the Carle Clinic, Plaintiff saw Julie Young (PA-C) who indicated Plaintiff suffered from a "probable right thumb MCP joint subluxation/dislocation with possible radial collateral ligament tear" (*Id.)*.   Plaintiff was told that his wound would need to heal by "secondary intention or surgical revision" and Ms. Young recommended twice daily dressing changes as well as splinting or casting (*Id.*).   Plaintiff indicates that the Carle Clinic expected to see him back early the following week for a wound check, but he was not taken back for his follow-up visit at this time despite complaining about pain and swelling in his injured thumb during visits to Defendant Fenoglio (*Id.*).   Plaintiff writes

that on December 6, 2010 he was taken to see the hand surgeon and received an x-ray that showed "early wear and tear changes" and "ulnar deviation of the thumb MCP joint, chronic right metacarpophalangeal (MCP) radial collateral ligament injury with multidirectional instability" (*Id.*).  Based on these findings, Plaintiff avers he was presented with two treatment options: (1) using a custom-made thermoplast splint fabricated by a hand therapist; or (2) right hand MCP fusion (*Id.*).  On December 9, 2010, Plaintiff saw Defendant Fenoglio who issued Plaintiff an ace bandage (*Id.*).  Plaintiff complains that this is not the splint that was recommended to him and it has not affected any change in his injury (*Id.*).

### *Pavey Hearing*

Pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the Court held a hearing on the issue of exhaustion on May 13, 2016.  At the hearing, counsel for Defendants and counsel for Plaintiff proffered arguments on behalf of their respective clients.  More specifically, counsel for Defendant Brooks asserted that Plaintiff's grievances, particularly the May 20, 2010 grievance, failed to sufficiently identify or describe her or complain about the treatment she provided to Plaintiff.  Defendant Brooks asserted that this grievance was vague regarding who treated Plaintiff's hand injury on May 16, 2010 and whether Plaintiff believed that this treatment was improper.  Defendant Wexford also asserted that the May 20, 2010 grievance failed to put the institution on notice that Plaintiff was complaining about a policy or procedure that it instituted (i.e. maintaining a policy or practice that prevented nurses from stitching wounds or prescribing medication unless a doctor was present while also limiting the times that doctors were on duty).  With regard to Defendant Martin, he asserted that this grievance failed to identify who was supposed to ensure Plaintiff was transported to an outside facility for evaluation, to which

Plaintiff responded that he did not know at the time he wrote this grievance who the healthcare administrator was and who was responsible for making such decisions.  Finally, the Defendants named in Count Five of Plaintiff's Complaint ("the Grievance Defendants") asserted that they were not named or reasonably described, to which Plaintiff asserted that this grievance was reviewed by these Defendants and, under the continuing violation doctrine, there was no duty to grieve Defendants' specific violations.

The Court also heard arguments concerning Plaintiff's January 10, 2011 grievance.  Defendants cited the arguments mentioned in their briefs concerning Plaintiff's failure to exhaust his administrative remedies with respect to this grievance and pointed to the credibility, or lack thereof, regarding Plaintiff's statements in that some dates mentioned in his affidavit were incorrect and asserted there is no corroborating evidence to establish that Plaintiff met with Counselor Downen as he attests.  Defendant Fenoglio indicated that if the Court finds that Plaintiff exhausted this grievance, it would be sufficient to exhaust the second part of Count One against Defendant Fenoglio (asserting Defendant Fenoglio ignored the treatment recommendations of specialists at the Carle Clinic).

CONCLUSIONS OF LAW

***Summary Judgment Standard***

Summary judgment is proper only if the moving party can demonstrate "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.,* 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th

Page **7** of **18**

Cir. 2005).   The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).  *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004).  A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  *Celotex*, 477 U.S. at 323.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.*  The Seventh Circuit has stated summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events."  *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

### Exhaustion Requirements under the PLRA

The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  Exhaustion of available administrative remedies is a precondition to suit.  *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004).  *See also Perez v. Wis. Dept. of Corr.*, 182 F.3d 532, 534-535 (7th Cir. 1999) (stating that § 1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983).  Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust.  *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006).  The

Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit.  See *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).  This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."  *Id*. at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).  In finding the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require."  *Pozo*, 286 F.3d at 1025.  In *Pavey*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff has exhausted his remedies.  *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).  If a Plaintiff has exhausted his remedies, the case will proceed on the merits.  If, however, a Plaintiff has not exhausted, the Court may either allow Plaintiff to exhaust or terminate the matter.

### Exhaustion Requirements under Illinois Law

Under the procedures set forth in the Illinois Administrative Code, an inmate must first attempt to resolve a complaint informally with his Counselor.  Ill. Admin. Code tit. 20, § 504.810(a).  If the complaint is not resolved, the inmate may file a grievance within 60 after the discovery of the incident, occurrence, or problem that gives rise to the grievance.  *Id*. § 504.810(b).  The grievance officer is required to advise the CAO at the facility in writing of the findings on the grievance.  *Id*. § 504.830(d).  The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed.  *Id*. § 504.830(d).  An inmate may appeal the decision of the CAO in writing within 30 days to the ARB for a final decision.  *Id*. § 504.850(a).  *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006).  An inmate's administrative remedies are not exhausted until the appeal is ruled on by the ARB.  *See Id*.  The

ARB shall make a final determination of the grievance within six months after receipt of the appealed grievance, where reasonably feasible under the circumstances. *Id*. § 504.850(f).

An inmate may request a grievance be handled as an emergency by forwarding it directly to the CAO. If the CAO determines there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken. *Id*. § 504.840. If, after receiving a response from the CAO, an offender feels the grievance has not been resolved, he may appeal in writing to the ARB within 30 days after the date of the CAO's decision. *Id*. § 504.850(a).

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id*. Prisoners are required only to provide notice to "responsible persons" about the complained of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

*Discussion*

### 1. Defendant Dr. Fenoglio

Defendant Fenoglio asserts that Plaintiff did not exhaust Count One insofar as Plaintiff claims this Defendant ignored treatment recommendations of specialists at the Carle Clinic. The Court disagrees, finding that Plaintiff adequately exhausted his administrative remedies with regard to this claim in his January 10, 2011 grievance.

With regard to Plaintiff's January 10, 2011 grievance, the Court finds that Plaintiff was thwarted in his attempts to exhaust this grievance at the institutional level. In particular, the Court finds Plaintiff credible in his assertion that he placed this grievance in the institutional mailbox to be sent to the Grievance Officer the day after receiving Counselor Downen's response, but never received any further response to this grievance. While the Court acknowledges that Plaintiff's declaration that he received this grievance from Counselor Downen on our around January 15, 2011 contradicts the date on the grievance itself that indicates it was responded to on January 24, 2011, the Court does not find that this discrepancy makes Plaintiff's declaration incredible or unfounded, particularly when considering the abundant evidence that corroborates Plaintiff's statements. First, Plaintiff indicated in his Complaint, filed on September 8, 2011 (well before the issue of exhaustion had arisen in this matter), that his January 10, 2011 grievance went unanswered (*See* Doc. 1, p. 5). Moreover, Plaintiff has provided documentary evidence of the letter he sent to Terri Anderson of the ARB on April 27, 2011 inquiring about his January, 2011 grievance that was stamped as "Received" by the "Office of Inmate Issues" (or the "ARB"), on May 3, 2011 (*See* Doc. 84-4). Said letter again corroborates Plaintiff's assertions regarding his attempts to exhaust the January, 2011 grievance and was

written well before the issue of exhaustion had arisen in this matter.  This evidentiary support that corroborates statements in Plaintiff's declaration leads the Court to conclude that Plaintiff attempted to exhaust his January, 2011 grievance, but his efforts were thwarted.

As conceded by Defendant Fenoglio at the Pavey Hearing, the content of the January, 2011 grievance is sufficient to exhaust Plaintiff's remaining claim in Count One alleging that Defendant Fenoglio ignored treatment recommendations of specialists at the Carle Clinic.  As such, the Court finds that Plaintiff should be allowed to proceed on this claim against Defendant Fenoglio.

**2.  Defendant Nurse Brooks**

Plaintiff's claim against Defendant Brooks relates to her alleged failure to provide adequate medical treatment for his hand injury on May 16, 2010.  Defendant Brooks contends that Plaintiff's May 20, 2010 grievance is insufficient to exhaust this claim as Plaintiff did not mention who wrapped his hand in gauze, did not describe who wrapped his hand in gauze, and did not mention any contact with any nurse or name or describe Defendant Brooks.  The Court disagrees.

While grievances must contain factual details regarding each aspect of the inmate's complaint, including the name of each person who is the subject of or who is otherwise involved in the complaint, this condition is tempered in that an offender who does not know the name of each person who is involved in the complaint may simply describe the individual with as much detail as possible.  ILCS § 504.810(b).  Here, Plaintiff explained that he was taken to the healthcare unit on May 16, 2010 after suffering an injury to his right hand.  Plaintiff goes on to complain that because there was no doctor on call, his hand was wrapped in gauze and he was

told he would need to wait to see the doctor the following day.  Plaintiff then complains that as of May 20, 2010 he had only had his hand wrapped in gauze and been given oral antibiotics, treatment regimens he clearly found insufficient.  A plain reading of Plaintiff's narrative in this grievance evidences his attempt to complain about the medical treatment received for his hand injury on May 16, 2010.  Although Plaintiff did not specifically mention or describe who wrapped his hand in gauze on May 16, 2010, he provided the institution with sufficient information to address his complaints regarding his treatment on this date.   Specifically, Plaintiff's statements clearly point to a nurse, as Plaintiff indicated that a doctor was not on duty, and noted the date on which the treatment was provided, May 16, 2010.  Based on these statements, the Court finds that the prison had sufficient information to address Plaintiff's complaints regarding his treatment and, with a minimal amount of due diligence, the institution could have discovered it was Nurse Brooks who saw Plaintiff on May 16, 2010.  For these reasons, the Court finds that Plaintiff's May 20, 2010 grievance is sufficient to exhaust Plaintiff's deliberate indifference claim against Defendant Brooks.

### 3.  Defendant Wexford Health Sources, Inc.

Plaintiff brings a policy and practice claim against Defendant Wexford asserting that it maintained an unconstitutional policy or practice preventing nurses from stitching wounds or prescribing medication unless a doctor was present, while also limiting the time that doctors were on duty.

While Defendant Wexford asserts that Plaintiff's grievances do not reference or complain about any Wexford policy to deny care, Plaintiff maintains that his May 20, 2010 grievance complaining that there was no doctor on duty to treat him and stitch his wound sufficiently

grieved the Wexford policy that allegedly precluded nurses from stitching a wound without a doctor being present.

The PLRA's exhaustion requirement was designed to afford prison officials a chance to address inmate complaints internally, prior to the filing of federal litigation.  *See, e.g., Kaba*, 458 F.3d at 684 (citation omitted).  In other words, the purpose of the grievance is to provide prison officials a "fair opportunity" to address an inmate's complaint.  *Maddox v. Love*, 655 F.3d 709, 713 (7th Cir. 2011).  Indeed, the Seventh Circuit has consistently reminded district courts that "all that the PLRA requires" is that a grievance alert "the prison to the nature of the wrong for which redress is sought," *Westefer v. Snyder*, 422 F.3d 570, 580 (7th Cir. 2005) (citation omitted), and afford prison officials an opportunity to respond, *see Pavey v. Conley*, 663 F.3d at 905-06.

Plaintiff's May 20, 2010 grievance certainly provided the institution with a "fair opportunity" to respond to Plaintiff's complaints regarding his medical treatment, or lack thereof.  More importantly, this grievance alerted prison officials to the alleged problem with the staffing of physicians in the healthcare unit and permitted prison officials (who, unlike Plaintiff, knew that Wexford was the healthcare contractor for the prison) to examine whether Wexford's policies or practices were the cause of Plaintiff's complaints regarding his treatment.  For these reasons, the Court finds that Plaintiff's May 20, 2010 grievance was sufficient to exhaust his claim against Wexford in Count Three.

### 4.  Defendant Dr. Phil Martin

Plaintiff claims that Defendant Martin, the Healthcare Administrator at Lawrence at all times relevant to Plaintiff's suit, was deliberately indifferent in refusing to grant Plaintiff's

referral request to an outside facility to treat his hand injury. Plaintiff also claims that this Defendant retaliated against him by denying him adequate medical treatment for his hand injury because he had previously filed a grievance against prison officials.

With regard to Plaintiff's deliberate indifference claim, Plaintiff asserts that his May 20, 2010 grievance gave prison officials notice that he was complaining about their failure to transfer him to an outside facility for treatment. Plaintiff also points to the complaints mentioned in his January 10, 2011 grievance in which he indicates that the Carle Clinic had expected to see him back within a week's time, but his visit was delayed. As mentioned above, the Court finds that Plaintiff sufficiently exhausted the administrative remedies that were available to him for both his May 20, 2010 and January 10, 2011 grievances. Although Plaintiff did not name or describe the physical characteristics of Defendant Martin, such circumstance is not fatal to the issue of exhaustion as Plaintiff need only describe the individual with as much detail as possible under the Illinois Administrative Code, *see* ILCS § 504.810(b), in order to serve the PLRA's purpose of providing prison officials a "fair opportunity" to address the inmate's complaint prior to engaging in federal litigation. *Maddox*, 655 F.3d at 713. Similar to the findings above with respect to Defendant Wexford, the Court finds that Plaintiff's grievances were sufficient to alert prison officials about delays Plaintiff was incurring in being transferred to an outside facility for medical treatment. The prison was certainly in a better position than Plaintiff to determine who was responsible for such transfers. To hold that Plaintiff failed to exhaust against Defendant Martin because he did not name or describe this Defendant when he did not have the knowledge or ability to determine who was responsible for such issues seems fundamentally unfair. For these reasons, the Court finds that Plaintiff's grievances are sufficient to exhaust Plaintiff's

deliberate indifference claim against Defendant Martin.

The Court also finds that Plaintiff's May 20, 2010 grievance is sufficient to exhaust Plaintiff's retaliation claim brought against Defendant Martin.   In this grievance, Plaintiff complains that his transfer to an outside facility for medical treatment was delayed, and then he goes on to state that "it seems as though [he is] being punished in retribution for a prior grievance [he] filed on January 2, 2010 in regards to their not providing [him] with [his] medication (Doc. 77-1, p. 2).   Although he did not connect these occurrences directly to Defendant Martin, the Court's reasoning articulated above can again be applied as Plaintiff cannot be required to name individuals responsible for his complaint that he does not yet know. For this reason, the Court finds that Plaintiff has sufficiently exhausted his retaliation claim against Defendant Martin.

### 5. Defendants Lee Ryker, Pamela Moran, Cecil Vaughn, Gladyse Taylor, and Brian Fairchild ("Grievance Defendants")

Plaintiff's claim against these Defendants is founded on their failure to ensure Plaintiff was provided adequate medical treatment for his hand injury after becoming aware of his complaints upon reviewing his grievances and other correspondence.   Defendants assert that Plaintiff failed to exhaust his administrative remedies with regard to these Defendants as he never named, mentioned, or described their actions in any grievance.   At the hearing, Plaintiff characterized the Defendants' actions as stemming from, or relating to, Plaintiff's complaints regarding his medical treatment and asserted that the "continuing violation" doctrine applies in this instance and Plaintiff was not required to specifically grieve these Defendants' actions in order to exhaust his claim.   The Court disagrees with Plaintiff and finds that the continuing violation doctrine cannot be applied in this instance.

Page **16** of **18**

First, the Court notes that Plaintiff has not sufficiently named or described the actions of these Defendants in the grievances before the Court.  Importantly, Plaintiff makes no indication that he is complaining about the inaction of any prison officials or grievance personnel to address the issues with his medical care; rather, his grievances merely highlight the inadequacies he perceives in his medical treatment.  With regard to Plaintiff's argument that these Defendants were part of a continuing violation and, as such, Plaintiff did not have to file separate grievances regarding their conduct, the Court finds such argument unavailing.  While the Seventh Circuit has held that "prisoners need not file multiple successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing" in order to exhaust their administrative remedies, *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013), the Court cannot find case law to support the proposition that this respite from the grievance procedure may apply to a claim that is only tangentially related to previously-grieved issues, especially when the Defendants have never been identified, mentioned, or described previously.  For these reasons, the Court finds that Plaintiff failed to exhaust his administrative remedies with regard to the Defendants named in Count Five.

### RECOMMENDATIONS

Based on the foregoing, it is hereby **RECOMMENDED** that the Motion for Summary Judgment for Failure to Exhaust Administrative Remedies filed by Defendants Brooks, Fenoglio, and Wexford (Doc. 76) be **DENIED** and the Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Defendants Martin, Ryker, Taylor, Fairchild, Moran, and Vaughn (Doc. 80) be **GRANTED IN PART AND DENIED IN PART**; that the Court **FIND** that Plaintiff did not exhaust his administrative remedies prior to filing suit against

Defendants Lee Ryker, Pamela Moran, Cecil Vaughn, Gladyse Taylor, and Brian Fairchild; that the claim against these Defendants (Count Five) be **DISMISSED WITHOUT PRJEUDICE**; and that the Court adopt the foregoing findings of fact and conclusions of law.

If District Judge Nancy J. Rosenstengel adopts this Report and Recommendation, Plaintiff will be proceeding in this action on Counts One, Two, Three, Four, and Six of his Complaint.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: July 20, 2016**

**DONALD G. WILKERSON**
**United States Magistrate Judge**