IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MIGUEL PEREZ, )
)
    Plaintiff, )
)
v. ) Case No. 3:11-cv-819-DGW
)
DR. JAMES FENOGLIO, WEXFORD )
HEALTH SOURCES, INC., and CHRISTINE )
BROOKS, )
)
    Defendants. )

**ORDER**

**WILKERSON, Magistrate Judge:**

This matter is before the Court on the Motion for Summary Judgment filed by Defendants James Fenoglio, Christine Brooks, and Wexford Health Sources, Inc. (Doc. 132). For the reasons set forth below, the Motion is **GRANTED IN PART AND DENIED IN PART**.

**PROCEDURAL BACKGROUND**

Plaintiff Miguel Perez is an inmate in the custody of the Illinois Department of Corrections ("IDOC"). Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Lawrence Correctional Center ("Lawrence"). More specifically, in his complaint, Plaintiff alleged that prison officials provided inadequate and delayed medical care for his severe hand injury in violation of the Eighth Amendment. At this juncture, Plaintiff is proceeding on the following claims:

    Count One:    Defendant Dr. James Fenoglio exhibited deliberate indifference toward Plaintiff's severe hand injury, in violation of the Eighth Amendment, when he failed to provide Plaintiff with adequate, timely care and ignored treatment recommendations of specialists at the Carle Clinic;

Count Two: Defendant Nurse Christine Brooks exhibited deliberate indifference toward Plaintiff's severe hand injury, in violation of the Eighth Amendment, when Brooks failed to provide Plaintiff with adequate medical treatment for his hand injury or ensure that others did;

Count Three: Defendant Wexford Health Sources, Inc. exhibited deliberate indifference toward Plaintiff's severe hand injury, in violation of the Eighth Amendment, by maintaining a policy or practice that prevented nurses from stitching wounds or prescribing medication unless a doctor was present, while also limiting the times that doctors were on duty; and

Count Six: Defendant Dr. James Fenoglio retaliated against Plaintiff, in violation of the First Amendment, when he denied Plaintiff adequate medical care for his hand injury because he filed a grievance against prison officials for withholding his prescription medication for depression.

Defendants Fenoglio, Brooks, and Wexford now move for summary judgment on the claims set forth against them. Plaintiff, through counsel, timely objected to Defendants' motion. The material facts related to Plaintiff's claims are set forth below.

**FACTUAL BACKGROUND**

Plaintiff sustained a right thumb injury while playing basketball on Sunday, May 16, 2010 at Lawrence Correctional Center (Defendants' Statement of Undisputed Facts, Doc. 133, ¶ 6). Following the injury, Plaintiff was taken to the Health Care Unit ("HCU") at Lawrence where he was evaluated by Defendant Nurse Christine Brooks (*Id.* at ¶ 7). It is undisputed that Defendant Brooks identified a "full thickness" laceration approximately two centimeters in length at the base of Plaintiff's right thumb (*Id.*). It is further undisputed that Defendant Brooks took Plaintiff's vital signs, including his temperature, pulse, and blood pressure, all of which were normal (*Id.*). As no physician was on-site at Lawrence at the time Plaintiff sustained his injury, Defendant Brooks contacted Defendant Dr. Fenoglio to determine how to proceed (*Id.* at ¶¶ 8-9). Defendant Brooks described Plaintiff's injury and current condition and, after speaking with Defendant Dr.

Fenoglio, Defendant Brooks cleansed Plaintiff's wound with saline and applied gauze pads over the wound, pursuant to Defendant Dr. Fenoglio's orders (*Id.* at ¶¶ 9-10). Defendant Brooks did not stitch Plaintiff's injury, indicating that it could not be stitched as there was no doctor on duty (Deposition of Plaintiff Miguel Perez, Doc. 133-5, p. 5). Indeed, there was no discussion regarding stitches between Defendant Brooks and Defendant Dr. Fenoglio, though Plaintiff's wound was "quite deep" (Deposition of Defendant Christine Brooks, Doc. 133-2 p. 13).

Plaintiff attests that during this time he informed Defendant Brooks that he was in extreme pain and requested pain medication, but she refused his request (Declaration of Plaintiff Miguel Perez, Doc. 140-1, ¶ 4). Defendant Brooks was authorized to provide Tylenol to inmates such as Plaintiff (Doc. 133-2, pp. 14-15). Plaintiff's medical record reflecting his May 16, 2010 examination with Defendant Brooks does not include any notation by Defendant Brooks as to the "character and severity" of Plaintiff's pain (*see* Plaintiff's Medical Records, Doc. 133-1, p. 4). Defendant Brooks, however, contends that she would have asked Plaintiff if he was in pain, but "[a]pparently he wasn't in that much pain and he wasn't requesting any [pain medication]." (Doc. 133-2, p. 15).

Later that afternoon, Plaintiff's wound was redressed by another nurse at Lawrence (Doc. *Id.* at p. 19; *see* Doc. 133-1, p. 5). The nurse noted only a scant amount of blood on the wound dressing applied by Defendant Brooks (*Id.*).

Plaintiff was examined by Defendant Dr. Fenoglio on May 17, 2010 (Deposition of Dr. James Fenoglio, Doc. 133-3, p. 8; *see* Doc. 133-1, p. 6). Dr. Fenoglio identified a two-inch "jagged, gaping wound" at the base of Plaintiff's right thumb and noted limited right thumb active range of motion (*Id.*). Dr. Fenoglio also noted irregularity in Plaintiff's Metacarpophalangeal

("MCP") joint[1], which felt soft to the touch (DSUF, ¶ 12; *see* Doc. 133-1, p. 6). X-rays of Plaintiff's right hand were taken and revealed no fracture or acute abnormality (*See* Doc. 133-1, p. 7). Dr. Fenoglio diagnosed Plaintiff with a tear laceration of the right thumb (DSUF ¶ 12; *see* Doc. 133-1, p. 6). Dr. Fenoglio also contacted an orthopedic hand specialist at the Carle Clinic to discuss Plaintiff's injury as part of his May 17, 2010 evaluation (DSUF, ¶ 13). Records from the Carle Clinic indicate that Dr. Fenoglio was advised to clean the wound well and put in a couple of stitches, if necessary (Doc. 140-2). Dr. Fenoglio noted in Plaintiff's institutional medical records that he was advised that it was not an emergency and Plaintiff would be scheduled for an appointment later in the week (Doc. 133-3, p. 19; *see* Doc. 133-1, p. 6). It is undisputed that Plaintiff's laceration was not sutured (PSUF, ¶ 66).

Plaintiff was subsequently seen by Physician's Assistant Julie Young on May 21, 2010 at the Carle Clinic (DSUF, ¶ 14). Young identified a two centimeter laceration at the base of Plaintiff's right thumb that extended from the web-space proximally across the base of the thumb (*Id.*). Young indicated the wound was "quite deep" with good granulation tissue around the edges and base of the thumb (*Id.*). It was further noted that the wound was gaping several millimeters and gaped more with abduction of the thumb (*Id.*). Young noted some difficulty in assessing the lateral stability of the thumb due to localized tenderness, but indicated Plaintiff was able to fully extend his right thumb and flex and extend the tip of the thumb as well (*Id.*). Following her examination, Young's assessment was that of a large soft tissue tear of the right hand and probable right thumb MCP joint subluxation/dislocation with possible radial collateral ligament tear (*Id.*).

With regard to treatment recommendations, Young noted that the laceration could not be

---

[1] The MCP joint of the right thumb is located at the base of the thumb, where the thumb meets the hand (Deposition of Dr. James Fenoglio, Doc. 133-3, p. 17).

repaired in the office, but that the injury could heal by secondary intention[2] or surgical revision (DSUF, ¶ 15; *see* Doc. 133-1, p. 11). Plaintiff attests that Young told him that due to the delay between the time of his injury and the time of her examination, she could not stitch his wound because "it was too old" (Doc. 140-1, ¶ 6). Young recommended twice daily dry dressing changes and that Plaintiff's injured area be cleansed with hydrogen peroxide (*Id.*). Young indicated that possible splinting or casting for Plaintiff's thumb injury would be recommended, however, the open wound on Plaintiff's right thumb could not be covered at that time (*Id.*). Finally, Young reported that she would anticipate seeing Plaintiff again early the next week for a wound check (*Id.*). Plaintiff was scheduled for a follow-up visit at Carle Clinic on May 25, 2010 for a wound follow-up and "possible brace" (*See* Doc. 133-1, p. 12). It is undisputed that Plaintiff was not taken back to Carle Clinic until December, 2010 (PSUF, ¶ 73). Plaintiff received dressing changes on May 22, 23, and 24, 2010 as recommended by Defendant Young (DSUF, ¶¶ 17-19).

Plaintiff saw Defendant Dr. Fenoglio again on May 25, 2010 for a follow-up examination (DSUF, ¶ 20). Dr. Fenoglio noted Plaintiff's wound was healing by secondary intention and he had good active range of motion without loss in flexion or adduction and full extension of his right thumb (*Id.*). Dr. Fenoglio recommended continued twice daily dressing changes per Young's recommendation (*Id.*). Dr. Fenoglio did not believe an off-site follow-up for a wound check was necessary at that time as he believed Plaintiff's wound could be effectively managed on-site (*Id.*). Plaintiff received dressing changes as recommended on May 26 and 27, 2010 (*Id.* at ¶ 21). On May 28, 2010, Plaintiff again saw Dr. Fenoglio who, upon examination, found that Plaintiff's right

---

[2] Secondary intention is "when the tissues are allowed to heal under normal circumstances without intervention with sutures or closure techniques" (Doc. 133-3, p. 17).

hand wound was healing although his right thumb MCP joint was swollen (*Id.* at ¶ 22). Plaintiff was to continue receiving dressing changes and engage in gradual active range of motion exercises (*Id.*). Plaintiff again received dressing changes as recommended from May 29, 2010 through June 2, 2010 (*Id.* at ¶ 23).

Following another examination by an on-site nurse practitioner on June 3, 2010, the previous order for dressing changes was discontinued as the nurse practitioner determined that Plaintiff's laceration was resolved (DSUF, ¶ 24). The following day, June 4, 2010, Plaintiff saw Dr. Fenoglio for a follow-up examination (*Id.* at ¶ 25). Dr. Fenoglio identified some right thumb swelling with full active range of motion (*Id.*). Dr. Fenoglio also noted that Plaintiff's laceration was healing well and recommended Plaintiff return for re-evaluation in six months (*Id.*).

From June, 2010 to December, 2010 Plaintiff was examined by Defendant Dr. Fenoglio on multiple occasions for various complaints (*see* DSUF ¶¶ 26-29, 31-32). At his deposition, Plaintiff testified that each time he went to the health care unit during this time he complained of pain, but he was never provided a splint or surgery for his right thumb injury (Doc. 133-5, p. 27). Defendants dispute this claim. It is undisputed, however, that on October 20, 2010 Plaintiff saw Dr. Fenoglio with continued complaints of right thumb numbness and pain and swelling (DSUF, ¶ 31). Dr. Fenoglio conducted an examination of Plaintiff's right hand and found active range of motion with no muscle atrophy, good opposition and normal capillary refill (*Id.*). He recommended Plaintiff begin ball gripping exercises and issued a prescription for Tylenol with instructions for Plaintiff to return for re-evaluation in one month (*Id.*). As instructed, Plaintiff again saw Dr. Fenoglio on November 22, 2010 (*Id.* at ¶ 32). Plaintiff again complained of right thumb weakness and a lack of grip strength (*Id.*). Following his examination of Plaintiff's right hand, Dr. Fenoglio referred Plaintiff to an orthopedic hand specialist for evaluation, noting

Plaintiff's weakened grip strength and inability to oppose his right thumb (*Id.*).

Plaintiff was taken to Carle Clinic on December 6, 2010 where he was examined by Dr. Clifford Johnson, an orthopedic hand specialist, in collaboration with Physician's Assistant Julie Young (DSUF, ¶ 33; PSUF, ¶ 78). Plaintiff complained of pain and limited range of motion in his right thumb (DSUF, ¶ 33). The medical record from Carle Clinic indicates that Plaintiff was last seen at the Clinic on May 21, 2010 presenting with a large soft tissue tear of the right hand, right thumb MCP dislocation, and probable radial collateral ligament tear (*see* Doc. 133-1, p. 36). The record further states that on May 21, 2010 Plaintiff's underlying ligamentous injury could not be addressed due to his open wound and, although Plaintiff was started on wound care and scheduled to be seen the next week for a wound check, Plaintiff never returned for his follow-up appointment (*Id.*). With regard to his present complaints, Dr. Johnson noted a well healed laceration with obvious subluxation of the right thumb MCP joint (DSUF, ¶ 33; *see* Doc. 133-1, p. 36). X-rays taken at the appointment revealed early wear and tear changes as well as ulnar deviation of the thumb MCP joint (*Id.*). Dr. Johnson and PA Young found Plaintiff suffered from a chronic right thumb MCP radial collateral ligament injury with multidirectional instability (*Id.*). Dr. Johnson presented Plaintiff with two options: (1) live with his condition and see how it goes in terms of symptoms, with the option of fitting Plaintiff for a custom-made Thermoplastic[3] splint fabricated by a hand therapist; or (2) undergo a right thumb MCP fusion (DSUF, ¶ 34; *see* Doc. 133-1, pp. 36-37). Dr. Johnson encouraged Plaintiff to try to "live with it" as long as he could and explained that the procedure would be the same today as it would be three years later if he was still symptomatic (*Id.*).

---

[3] Merriam-Webster's Dictionary defines "thermoplastic" as "capable of softening or fusing when heated and of hardening again when cooled." *Merriam-webster.com*. https://www.merriam-webster.com/dictionary/thermoplastic.

The following day, upon his return to Lawrence, Plaintiff was examined by Defendant Dr. Fenoglio (DSUF, ¶ 35). It is undisputed that Dr. Fenoglio read Dr. Johnson's treatment recommendations and issued Plaintiff a prescription for Ultram, an opioid pain medication, for ninety days (*Id.*). However, Plaintiff contends that Dr. Fenoglio responded sarcastically to Dr. Johnson's recommendation regarding the option of a custom-made splint by placing an ace bandage in Plaintiff's hand and remarking "here's your splint" (Doc. 133-5, p. 28). Dr. Fenoglio contends that he placed Plaintiff's right hand in an ace wrap as it was his belief that inmates could not wear casts in prison (and the split recommended by Dr. Johnson is similar to a cast) (Doc. 133-3, p. 12). Further, Dr. Fenoglio testified that he believed such a splint would be a security concern and that security measures trump a patient's needs in prison as "the safety and welfare of the general public is at stake by keeping these hardened criminals under control" (PSUF, ¶ 81; Doc. 133-3, p. 13). Dr. Fenoglio did not inquire with any prison officials whether the type of splint recommended by Dr. Johnson would in fact be allowed in the prison (PSUF, ¶ 82).

On January 10, 2011, Plaintiff submitted an institutional grievance complaining about persisting pain, swelling, and discomfort related to his right hand injury[4] (*see* Doc. 140-3). Plaintiff was subsequently examined by Defendant Dr. Fenoglio on January 24, 2011 (DSUF, ¶ 37). At this examination, Plaintiff complained of right thumb triggering and constant tingling and pain and requested surgery on his right thumb (*Id.*). Dr. Fenoglio referred Plaintiff for surgery, noting Plaintiff's right thumb was very lax at the MCP joint and that he did not appear to perform activities of daily living in his present condition (*Id.*). Plaintiff was referred to the Carle Clinic and saw Dr. Johnson on February 15, 2011 (*Id.* at ¶ 38; PSUF, ¶ 84). Dr. Johnson found global

---

[4] The Court overrules Defendants' objection to Plaintiff's reliance on this document on the basis of hearsay as it is not apparent that Plaintiff is using the document to prove the truth of the matter asserted.

Page **8** of **20**

instability of Plaintiff's right thumb MCP joint and noted Plaintiff complained of pain with movement of his thumb in all directions (*Id.*). Dr. Johnson indicated Plaintiff's only surgical option was an MCP joint fusion and Plaintiff indicated his desire to proceed (*Id.*). Dr. Fenoglio referred Plaintiff for surgery on February 17, 2011 and, on March 2, 2011, Dr. Johnson performed a right thumb MCP joint arthrodesis (fusion) (DSUF, ¶ 39; PSUF, ¶ 85). Plaintiff saw Dr. Fenoglio on March 4, 2011 and March 7, 2011 for follow-up examinations post-operation (DSUF, ¶¶ 41-42). On March 15, 2011 Plaintiff saw Dr. Johnson who documented a well-healing wound, removed Plaintiff's sutures, and placed Plaintiff's right hand in a "short arm thumb spica fiberglass" cast (*Id.*; PSUF, ¶ 86). Plaintiff again saw Dr. Johnson on April 14, 2011 for a post-operative follow-up appointment (DSUF, ¶ 46). X-rays taken of Plaintiff's thumb on this date revealed appropriate healing and Dr. Johnson removed Plaintiff's cast (*Id.*; *see* Doc. 140-5). Dr. Johnson placed Plaintiff in a hard, non-thermoplastic, removal brace (PSUF, ¶ 88; *see* Doc. 140-5). Dr. Johnson discontinued Plaintiff's use of the brace at a follow-up examination on May 23, 2011 (DSUF, ¶ 50). Soon thereafter, on May 27, 2011, Plaintiff was examined by Dr. Fenoglio and reported complaints of sharp right thumb pain (*Id.* at ¶ 51). Dr. Fenoglio noted Plaintiff's inability to oppose his right thumb to his right little finger and documented a well-healed scar (*Id.*). Dr. Fenoglio indicated Plaintiff had been released from Dr. Johnson's care and issued Plaintiff a renewed prescription for Tramadol for thirty days (*Id.*).

An x-ray of Plaintiff's right thumb was taken on November 21, 2013 that revealed a prior surgical fusion of the MCP joint of the right thumb (*Id.* at ¶ 53). The report documents that the bony alignment was stable and notes further progression of the fusion from the prior study (*Id.*). In September, 2014, Plaintiff was transferred from Lawrence to Graham Correctional Center ("Graham") (*Id.* at ¶ 55). Plaintiff received a removable brace from Graham in October, 2016 that

was supported by a removable piece of hard metal approximately six inches long and one and one-half inches wide (PSUF, ¶ 89).

## LEGAL STANDARDS

### 1. *Summary Judgment Standard*

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of a nonmoving party's case necessarily renders all other facts immaterial." *Id*. The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted).

### 2. *Eighth Amendment Deliberate Indifference*

The Supreme Court has recognized that "deliberate indifference to serious medical needs

of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on such a claim, Plaintiff must show first that his condition was "objectively, sufficiently serious" and second, that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).

With regard to the first showing, the following circumstances could constitute a serious medical need: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie Cnty.,* 394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

A prisoner must also show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'." *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even recklessness as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823, F.2d 1068, 1072 (7th Cir. 1987). Put another way, the plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference.

*Greeno*, 414 F.3d at 653. A plaintiff does not have to prove that his complaints were "literally ignored," but only that "the defendants' responses were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes,* 546 F.3d at 524 (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)).

### 3. *First Amendment Retaliation*

It is well settled that a prison official who takes action in retaliation for a prisoner's exercise of a constitutional right violates the Constitution. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). The Seventh Circuit has articulated that for a plaintiff to prevail on a First Amendment retaliation claim, he must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in the defendant's decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)) (other citations omitted).

At the summary judgment stage, the Seventh Circuit has held that the burden of proving causation is split between the parties. *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012). Initially, in order to establish a prima facie case, the plaintiff must produce evidence that his speech was at least a motiving factor in the defendant's decision to take retaliatory action. *Id.* Then, the burden shifts to the defendant to rebut the causal inference raised by the plaintiff's evidence. *Id.* If the defendant fails to counter the plaintiff's evidence, then the defendant's retaliatory actions are considered a "necessary condition" of the plaintiff's harm, and the plaintiff has established the "but-for" causation needed to succeed on his claim. *Id.*

## DISCUSSION

### 1. *Defendant Nurse Christine Brooks*

Defendant Brooks does not argue that Plaintiff's medical condition fails to meet the objective requirement of a "serious medical need" as defined above. As there is no argument made as to this requirement the Court finds said point is conceded and Plaintiff's right thumb injury qualifies as a serious medical need.

With regard to the second, subjective component, Defendant Brooks argues that judgment in her favor is appropriate as she provided adequate care for Plaintiff's right thumb laceration and, in particular, she was not deliberately indifferent by not suturing the same.

It is well settled in this Circuit that the Eighth Amendment does not demand "specific care" or the "best care possible"; rather, it requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Indeed, the Seventh Circuit recognizes that "[a] prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment was "blatantly inappropriate." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citing *Greeno*, 414 F.3d at 654 (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)). Making such a showing is not easy as "[a] medical professional is entitled to deference in treatment decisions unless 'no minimally competent professional would have so responded under those circumstances.'" *Pyles*, 771 F.3d at 409 (quoting *Sain v Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008) (other quotation omitted)). In other words, federal courts will not interfere with a doctor's decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment. *Pyles*, 771 F.3d at 409 (citations omitted).

Here, Defendant asserts that she provided necessary and appropriate treatment for Plaintiff's right thumb injury and laceration insofar as she conducted a physical examination, consulted with Defendant Dr. Fenoglio, and then cleaned and dressed Plaintiff's wound. Plaintiff contends this treatment was inadequate as Defendant failed to suture, or, more specifically, failed to assess whether Plaintiff's laceration should be sutured. When crediting the evidence in the record in Plaintiff's favor as the Court must do at this stage, the Court finds some evidence to suggest that Plaintiff's laceration should have, or at the very least, could have been sutured. However, remarkably absent from the record now before the Court is evidence that Defendant Brooks' failure to suture or recommend sutures exacerbated Plaintiff's injury or unnecessarily prolonged pain. *See Petties v. Carter*, 836 F.3d 722, 730-31 (7th Cir. 2016). Although Physician's Assistant Young remarked at Plaintiff's May 21, 2010 examination that Plaintiff could not be issued a cast to address his MCP injury due to his open wound, there is no evidence that such circumstance caused Plaintiff unnecessary pain or exacerbated his injury. Moreover, there is no evidence that the treatment provided by Defendant Brooks was "blatantly inappropriate," even if the Court considers the fact that such lacerations are often sutured. In particular, it appears that the wound adequately healed within a reasonable amount of time.

The Court now turns to Plaintiff's assertion that Defendant Brooks was deliberately indifferent by failing to provide him pain medication on May 16, 2010. "A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011). "The length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *Id.* (quoting *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010).

Here, the evidence establishes that Plaintiff told Defendant Brooks he was in severe pain on May 16, 2010. Defendant Brooks did not provide Plaintiff with any pain medication; however, she cleaned and dressed Plaintiff's wound. Plaintiff subsequently saw another nurse for a wound dressing change approximately five hours later, around 4:00 p.m. There is no evidence that he complained of pain at that time. Based on this timeline, the only plausible inference is that Plaintiff's pain had substantially subsided within five hours of seeing Defendant Brooks. Given the short duration of Plaintiff's complaints of pain, coupled with the fact that Defendant Brooks provided treatment to address the underlying cause of Plaintiff's pain (i.e. cleaning and dressing his wound), the Court finds that no reasonable jury could conclude that Defendant Brooks' failure to provide pain medication on May 16, 2010 amounted to deliberate indifference. *See Snipes*, 95 F.3d at 592 ("It would be nice if after appropriate medical attention pain would immediately cease, its purpose fulfilled; but life is not so accommodating. Those recovering from even the best treatment can experience pain. To say the Eighth Amendment requires prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment would be absurd.").

For these reasons, Defendant Brooks is entitled to judgment as a matter of law on Plaintiff's claim of deliberate indifference (Count Two).

2. *Defendant Dr. James Fenoglio*

   a. **Deliberate Indifference**

Defendant Dr. Fenoglio asserts he is entitled to judgment as a matter of law on Plaintiff's deliberate indifference claim as he provided Plaintiff with prompt, adequate, and necessary medical treatment for his right thumb injury pursuant to his medical training, skill, and experience.

The evidence, viewed in Plaintiff's favor, establishes that Defendant Dr. Fenoglio examined Plaintiff's right hand and referred Plaintiff to a hand specialist on May 17, 2010. Dr.

Fenoglio was advised to clean Plaintiff's wound and put in a couple of stitches, "if necessary." Plaintiff was to be scheduled for an appointment with a specialist later in the week. Plaintiff saw a specialist, PA Young, on May 21, 2010. Following an examination, PA Young recommended twice daily dressing changes for Plaintiff's wound, indicating that splinting or casting for his thumb injury would be recommended, but that due to the open wound, Plaintiff's right thumb could not be covered at that time. Significantly, Plaintiff was scheduled for a follow-up examination at Carle Clinic on May 25, 2010 for a wound follow-up and "possible brace," but said follow-up was cancelled by Dr. Fenoglio who determined that Plaintiff's wound care could be managed effectively on-site.

Plaintiff did not return to the Carle Clinic until December 6, 2010. During the interim period, Plaintiff saw Dr. Fenoglio on multiple occasions and Plaintiff complained about right hand pain every time he went to the health care unit. During his December 6, 2010 examination at the Carle Clinic with Dr. Johnson and PA Young, Plaintiff was provided two options: (1) live with his condition and see how it goes in terms of symptoms, with the option of fitting Plaintiff for a custom-made Thermoplastic splint fabricated by a hand therapist; or (2) undergo a right thumb MCP fusion. Dr. Fenoglio provided Plaintiff with an ace bandage on the apparent recommendation of Dr. Johnson and PA Young. Plaintiff ultimately underwent MCP joint fusion surgery on March 2, 2011.

Plaintiff argues summary judgment is not appropriate as to Defendant Dr. Fenoglio due to his (1) failure to suture Plaintiff's wound following his May 17, 2010 examination, despite being so advised by the orthopedic specialist at the Carle Clinic; (2) failure to follow the treatment recommendations of the orthopedic hand specialist; and (3) failure to adequately address Plaintiff's complaints of right-thumb pain from June to December, 2010.

As to Plaintiff's first point, the Court refers to its discussion above with respect to Defendant Brooks. Again, the Court finds some evidence to suggest that Plaintiff's laceration should have, or at the very least, could have been sutured. However, the record is bereft of any evidence that Defendant Fenoglio's failure to suture or recommend sutures exacerbated Plaintiff's injury or unnecessarily prolonged pain. *See Petties*, 836 F.3d at 730-31. Although PA Young remarked at Plaintiff's May 21, 2010 examination that Plaintiff could not be issued a cast to address his MCP injury due to his open wound, there is no evidence that such circumstance caused Plaintiff unnecessary pain or exacerbated his injury. Moreover, there is no evidence that the treatment provided by Defendant Brooks was "blatantly inappropriate," even if the Court considers the fact that such lacerations are often sutured. In particular, it appears that the wound adequately healed within a reasonable amount of time.

Evidence concerning Defendant Dr. Fenoglio's failure to follow the treatment recommendations of the Carle Clinic specialists and his failure to adequately address Plaintiff's complaints of pain, however, may be sufficient for a reasonable jury to find that Dr. Fengolio acted with deliberate indifference. In particular, it is apparent that the specialists at the Carle Clinic considered possible splinting or casting of Plaintiff's right thumb during his May 21, 2010 examination. Although said recommendation could not be made at the time due to Plaintiff's open wound, it appears that a possible brace was to again be considered at Plaintiff's follow-up appointment scheduled for May 25, 2010. Dr. Fenoglio cancelled Plaintiff's May 25, 2010 follow-up examination with PA Young and/or Dr. Johnson noting that Plaintiff's wound care could be managed on-site. Dr. Fenoglio, however, did not address how his decision to cancel the follow-up exam would affect the possibility for Plaintiff to be treated with casting or splinting. Thus, it appears that Dr. Fenoglio ignored the recommendations of PA Young. *See Arnett*, 658

F.3d at 753 (citing *Jones v. Simek*, 193 F.3d 485, 490 (7th Cir. 1999). For the next six months, Plaintiff complained of pain to Dr. Fenoglio, but he was not sent for a follow-up examination with Dr. Johnson and PA Young until December 6, 2010. Only after this date was Plaintiff provided with any type of splint or brace (and it is clearly disputed as to whether the brace provided was adequate). Thus, there is a question of fact as to whether Dr. Fenoglio adequately addressed Plaintiff's complaints of pain or whether he unnecessarily delayed treatment, thereby prolonging Plaintiff's pain. *See Arnett*, 658 F.3d at 753. For these reasons, Dr. Fenoglio is not entitled to judgment as a matter of law and Plaintiff will be allowed to proceed on this claim (Count One).

### b. Retaliation

Defendant Dr. Fenoglio argues summary judgment in his favor on Plaintiff's claim of retaliation is warranted as there is no evidence Defendant had any knowledge of a grievance Plaintiff submitted in January, 2010 concerning issues with a prescription medication and there is not a chronology of events from which retaliation could possibly be inferred. The Court agrees.

In order to make his prima facie case at this stage, Plaintiff's evidence must be sufficient to show that the filing of his grievance was a motivating factor in Defendant Dr. Fenoglio's alleged retaliatory action — acting with deliberate indifference to Plaintiff's medical needs. Plaintiff may meet his burden by presenting either direct or circumstantial evidence. *Kidwell*, 679 F.3d at 965. Direct evidence is evidence which will prove a particular fact without reliance upon inference or presumption, while circumstantial evidence is evidence from which a trier of fact may infer that retaliation occurred, including suspicious timing or ambiguous oral or written statements. *Id.* (quotations and citations omitted).

Plaintiff provides no direct evidence of any retaliatory motive. At most, it appears Plaintiff is relying on the timing of the events to establish his prima facie case. Even when

viewing the evidence in Plaintiff's favor, it is insufficient to meet his burden. Notably, the Seventh Circuit has held that a plaintiff's reliance on suspicious timing to establish a prima facie retaliation claim will "rarely be sufficient in and of itself to create a triable issue." *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002) (citations omitted). Further, the adverse action must follow "close on the heels" of the protected expression and the plaintiff must show that the person who took the adverse action knew of the protected conduct. *Kidwell*, 679 F.3d at 966. Here, the Court is not convinced that the alleged retaliatory action followed "close on the heels" of any protected expression and, more importantly, there is simply a lack of evidence that Defendant Dr. Fenoglio was even aware of Plaintiff's protected expression (i.e. the filing of his January, 2010 grievance). Accordingly, Defendant Dr. Fenoglio is entitled to summary judgment as to Count Six, Plaintiff's claim of retaliation.

   3. *Wexford Health Sources, Inc.*

Plaintiff's deliberate indifference claim against Defendant Wexford is premised on its alleged maintenance of a policy or practice limiting the times doctors are on duty while also preventing nurses from stitching wounds or prescribing medication unless a doctor is present.

As articulated by the Seventh Circuit, where a private corporation has contracted to provide essential government services, such as health care for prisoners, said private corporation cannot be held liable under § 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself. *Shields*, 746 F.3d at 789; *see also Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Accordingly, in order for Plaintiff to recover from Wexford, he must offer evidence that his injury was caused by a Wexford policy, custom, or practice of deliberate indifference to medical needs, or a series of bad acts that together raise the inference of such a policy. *Id.* at 796. Also, a plaintiff pursuing a

viewing the evidence in Plaintiff's favor, it is insufficient to meet his burden. Notably, the Seventh Circuit has held that a plaintiff's reliance on suspicious timing to establish a prima facie retaliation claim will "rarely be sufficient in and of itself to create a triable issue." *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002) (citations omitted). Further, the adverse action must follow "close on the heels" of the protected expression and the plaintiff must show that the person who took the adverse action knew of the protected conduct. *Kidwell*, 679 F.3d at 966. Here, the Court is not convinced that the alleged retaliatory action followed "close on the heels" of any protected expression and, more importantly, there is simply a lack of evidence that Defendant Dr. Fenoglio was even aware of Plaintiff's protected expression (i.e. the filing of his January, 2010 grievance). Accordingly, Defendant Dr. Fenoglio is entitled to summary judgment as to Count Six, Plaintiff's claim of retaliation.

   3. *Wexford Health Sources, Inc.*

Plaintiff's deliberate indifference claim against Defendant Wexford is premised on its alleged maintenance of a policy or practice limiting the times doctors are on duty while also preventing nurses from stitching wounds or prescribing medication unless a doctor is present.

As articulated by the Seventh Circuit, where a private corporation has contracted to provide essential government services, such as health care for prisoners, said private corporation cannot be held liable under § 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself. *Shields*, 746 F.3d at 789; *see also Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Accordingly, in order for Plaintiff to recover from Wexford, he must offer evidence that his injury was caused by a Wexford policy, custom, or practice of deliberate indifference to medical needs, or a series of bad acts that together raise the inference of such a policy. *Id.* at 796. Also, a plaintiff pursuing a

policy or practice claim must show that policymakers were aware of the risk created by the custom or practice and must have failed to take appropriate steps to protect the plaintiff. *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2009).

Defendant Wexford contends it is entitled to judgment as a matter of law as neither Dr. Fenoglio nor Defendant Brooks were deliberately indifferent to Plaintiff's medical condition and, in any event, there is no evidence that any policy or practice of Wexford violated Plaintiff's constitutional rights. Based on the review of the facts in the record, and in light of Plaintiff's failure to set forth any argument to the contrary, the Court agrees that the record is bereft of evidence that any policy of Wexford violated Plaintiff's constitutional rights. Accordingly, the Court finds Defendant Wexford is entitled to judgment as a matter of law on Plaintiff's claim of deliberate indifference (Count Three).

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed by Defendants James Fenoglio, Christine Brooks, and Wexford Health Sources, Inc. (Doc. 132) is **GRANTED IN PART AND DENIED IN PART**. Counts Two, Three, and Six are **DISMISSED WITH PREJUDICE** as are Defendants Christine Brooks and Wexford Health Sources, Inc.

Plaintiff shall proceed in this action only on his claim of deliberate indifference against Defendant Dr. James Fenoglio.

**IT IS SO ORDERED.**

**DATED: October 16, 2017**

                                           **DONALD G. WILKERSON**
                                           **United States Magistrate Judge**